### In re WILLIAMS.

(District Court, N. D. Ohio, E. D.    July 11, 1918.)

#### No. 6174.

1. USURY ⊛56—COMMISSION TO AGENT.
   That one accepted an agreed commission for securing a loan and other services, and had the mortgage for the loan made to another as mortgagee, and himself advanced money from funds of the clients in his own bank account, and was prevented from finally placing the mortgage by the bankruptcy of the mortgagor, did not constitute commission money paid for the use of money, so as to make the transaction usurious.

2. BROKERS ⊛65(4)—DUAL AGENCY—COMMISSION.
   That a broker, contracting to secure a loan and perform other services for an agreed commission, advanced money on the loan secured by a mortgage taken in the name of another as mortgagee, intending to sell the mortgage, did not constitute him a dual agent, so as to forfeit his commission.

3. MORTGAGES ⊛58—EXECUTION—WITNESSES.
   A mortgage is not invalid because witnessed by the agent who negotiated the loan for the mortgagee.

4. ACKNOWLEDGMENT ⊛20(3)—INTEREST OF NOTARY.
   A mortgage, the acknowledgment to which was taken before the agent who negotiated the loan for the mortgagee, is not invalid.

5. MORTGAGES ⊛151(3)—PRIORITY—STATUTES.
   Gen. Code Ohio, § 8321—1, as enacted by Act May 27, 1915 (105–106, Ohio Laws p. 531), providing for priority of improvement mortgages over

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

mechanics' liens, etc., limited to the extent the proceeds are actually used as by statute provided, cannot apply to the proceeds of mortgage not containing the statutory requisites of an improvement mortgage, and the priority of such mortgage is covered by sections 8310, 8321.

6. BANKRUPTCY ⚖⇒342½—ALLOWANCE OF CLAIMS—CORRECTION OF REFEREE'S REPORT.

Where a referee in bankruptcy held that one furnishing labor and materials under contract with the owner and complying with Gen. Code Ohio, § 8314, was not entitled to a mechanic's lien because of failure to file statement required by section 8312, and counsel for all lienors, they representing all persons interested, admit that such statement was filed, the order will be modified, and such lien allowed.

In Bankruptcy. In the matter of Joseph C. Williams, bankrupt. On petition for review of the referee's report, marshaling liens and establishing priority thereof. Order modified and confirmed.

A. J. Hackman and White, Johnson, Cannon & Neff, all of Cleveland, Ohio, for bankrupt.

Dorr E. Warner, of Cleveland, Ohio, for lienholders.

P. S. Crampton, of Cleveland, Ohio, for trustee.

Frank Higley, of Cleveland, Ohio, for Lake View Land & Improvement Co.

A. O. Dickey, of Cleveland, Ohio, for H. S. Johns.

WESTENHAVER, District Judge. This matter is before me on petitions for review of the trustee in bankruptcy and of certain creditors of the bankrupt claiming mechanics' liens, seeking to review the findings and order of the referee, made herein on or about March 18, 1918, marshaling liens and establishing priority thereof against the sale proceeds of lot No. 11, located at 11805 Castlewood avenue, Cleveland, Ohio. The referee's findings of fact are not disputed, and, so far as necessary to determination of the questions arising on these petitions for review, will be briefly stated.

The bankrupt, Joseph C. Williams, bought this lot April 20, 1916, from the Lake View Land & Improvement Company, hereinafter called the land company, and agreed to pay therefor $1,600, one-half cash and the residue on time, to be secured by a second mortgage. Coincidently therewith he employed one H. S. Johns to negotiate for him a loan of $2,500, to be secured by a first mortgage on this lot. He further agreed to pay Johns a commission of $150 for services in securing this loan, procuring and examining the abstract, recording the deeds, taking out insurance, and disbursing the proceeds of the mortgage loan in a manner presently to be stated. A deed was duly executed by the land company to the bankrupt. A mortgage was executed by the bankrupt to Mary Warren to secure the payment of $2,500, evidenced by a note for that amount payable to her. Another mortgage was executed by him to the land company securing $800, the deferred payment of purchase money. All of these writings bear the same date and were delivered to and intrusted with H. S. Johns. He recorded the deed and mortgages in the following order: First, the deed from the land company to the bankrupt; second, the mortgage from the bankrupt to

⚖⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Mary Warren; and, third, the mortgage from the bankrupt to the land company. This order, it is not disputed, was in accordance with the understanding of all the parties interested; the land company having in writing expressly agreed that the mortgage for $2,500 should have priority over its mortgage of $800.

The mortgage executed to Mary Warren was witnessed by Johns and acknowledged before him as a notary public. Mary Warren was his mother-in-law. She did not lend or advance any money on the mortgage, and it was not expected that she would. Her name as mortgagee and as a party to the note was used by Johns for convenience only, so as to enable him thereafter to negotiate a loan on the basis of this note and mortgage, and also conceal for taxing purposes the name of the future holder thereof. This method of doing business had been pursued by Johns in many similar transactions, both with the bankrupt and other persons prior thereto. Mary Warren, immediately upon the execution of the note and mortgage, assigned them in blank. Johns, at the time Williams became insolvent and the petition in bankruptcy was filed, had not placed the mortgage and note with any client, but had from time to time made payments and advances on the faith and credit thereof to Williams as follows:

```
1916.
April   20. Commission ...........................................$150.00
            Abstract and record.....................................  6.80
May      2. Lake View Land Company...............................  800.00
May      8. Cash ................................................  500.00
July     1. Insurance ...........................................   21.20
July     2. Cash ................................................  500.00
August   8. Cash ................................................  300.00
```

The referee has found that the aggregate of these items, with interest thereon from the dates thereof, is the amount due on this mortgage, and that it is a valid and subsisting mortgage, entitled to priority. The residue of principal, amounting to $222.20, was not allowed; but as Johns, the only person prejudiced by this holding, has filed no petition for a review, it will be regarded as final.

Williams, when this lot was purchased and these two mortgages were executed, intended to erect a building thereon, and this was known to Johns. He was in the business of buying lots and erecting buildings thereon and selling the lots thus improved. He had been doing this for several years, and had, when adjudged a bankrupt, some 15 or 20 buildings in various stages of progress towards completion. Johns had financed his building operations in this manner in many similar transactions. His practice was not to pay the money direct to contractors, laborers, or materialmen, but to Williams, making such payments, however, from time to time, as Johns believed the stage of his construction would warrant. Williams, the bankrupt, began building operations on this lot about July 1, 1916. Johns advanced $800 thereafter. Williams became financially involved, and the petition in bankruptcy was filed in November following.

The petitioners assign as error and argue that the referee erred in the following respects: (1) In including the item of $150 commission as a part of the aggregate due on the $2,500 mortgage. (2) In not

holding that the $2,500 mortgage was invalid, and therefore not a lien in any amount, because Johns was interested therein as mortgagee, and was disqualified to act as a witness or notary in the execution thereof. (3) In not holding that, even if said mortgage was valid, it was subordinate in priority to the mechanic's liens. (4) In disallowing the claim of Mrs. A. B. Tindall to a mechanic's lien.

[1] 1. I am of opinion that the referee properly allowed the item of $150. This allowance is objected to, because it is said to be usurious. Usury is the exaction of more than the lawful rate of interest for the use of money. If the amount paid is in whole or in part for other lawful services, then it cannot be said to have been paid for the use of the money, and is not usurious. 39 Cyc. 931 (111), 888; White Water Valley Canal Co. v. Vallette, 21 How. 414, 422, 16 L. Ed. 154. As already said, other services were to be performed by Johns, and it is in part for these services that Williams agreed to pay $150. It was not expected that Johns would make the loan himself, but that he would secure the money by negotiating a loan. The money advanced, it is true, was advanced by check on Johns' personal bank account; but it also appears that this bank account was used by Johns as the common deposit of his own and funds received and handled by him for various clients, whose money was lent out by him on mortgages. Shortly prior to this date he had received from his wife and deposited therein a sum of $6,500, which it was expected he would invest for her in real estate mortgages. This was the course pursued in other transactions between Johns and the bankrupt, and between Johns and other persons, and Johns from time to time delivered notes and mortgages to persons who had intrusted him with money to be invested in real estate mortgages. The fact that Williams became financially involved before Johns had placed this mortgage, as had been originally intended and as undoubtedly would have been done, except for such bankruptcy, does not convert a contract to pay a lawful compensation for lawful services into a usurious agreement for the use of money.

[2] The contention is also made that Johns is not entitled to this commission because, as agent of the mortgagor to negotiate a loan, he had no right to have an interest in the loan to be made. The principle of dual agency has, it seems to me, no application to the present situation. Johns was not representing another party at the time he made this contract for a commission, and it was not understood that he himself would lend his own money. This transaction was handled in the usual manner of other transactions between the same parties; that Johns eventually, owing to Williams' bankruptcy, was obliged to keep the mortgage and collect it, does not give the transaction a different color.

[3, 4] 2. I am of opinion that the referee did not err in holding that the mortgage was properly executed, and was not invalid because Johns was a witness thereto, and, as a notary, certified the mortgagor's acknowledgment. This conclusion is in accord with and fully supported by the decision of the Supreme Court of Ohio in Read v. Loan Co., 68 Ohio St. 280, 67 N. E. 729, 62 L. R. A. 790, 96 Am. St. Rep. 663.

The facts are so nearly similar, the principle involved is precisely the same, and the considerations involved are so fully and ably considered in that opinion, that a reference thereto is deemed adequate for the purposes of this memorandum.

[5] 3. I am of opinion that the referee did not err in giving the $2,500 mortgage priority over the mechanics' liens. This position is the one mainly relied on and was strenuously urged by petitioners. They base this contention upon section 8321—1, General Code, enacted May 27, 1915 (105–106, O. L. 522–531). This section is in part as follows:

"Except as hereinafter provided in this section, the lien of a mortgage *given in whole or in part to improve real estate, or to pay off prior encumbrances* thereon, or both, the proceeds of which are actually used in such improvement in the manner contemplated in sections 8310 and 8311 of the General Code, or to pay off prior encumbrances or both, and which mortgage contains therein the *correct name and address of said mortgagee, together with a covenant between the mortgagor and mortgagee authorizing and empowering the mortgagee to do all things in this act provided by said mortgagee to be done,* shall be prior to all mechanics', materialmen's and similar liens and all liens provided for in this chapter that are filed for record after said improvement mortgage is filed for record, to the extent that the proceeds thereof are used and applied for the purposes aforesaid and pursuant to the provisions of this section, and such mortgage shall be a lien on the premises therein described from the time it is filed for record for the full amount that is ultimately and actually paid out under said mortgage, regardless of the time when the money secured thereby is advanced."

This section is to be construed in connection with other sections, declaring when and from what date mortgages and judgments shall be liens on real estate. It must also be construed in connection with sections 8310 and 8321 of the mechanic's lien law. These other sections provide that mechanics' liens shall be prior to all liens which shall be given or recorded subsequent to the date the first item of labor or materials was performed or furnished. This is the general rule of priority, declared and established as between mechanics' liens and other liens, such as mortgages and executions. Section 8321—1 is not to be taken as repealing, modifying, or revolutionizing the general rules relating to the priority of mortgage and judgment liens, unless the legislative intent so to do is clearly expressed.

The question, then, is: To what mortgages and under what circumstances does this special section 8321—1 apply? The petitioners' contention, briefly stated, is that Johns' mortgage is a construction mortgage—that is, a mortgage given in whole or in part to improve real estate, or to pay off prior incumbrances thereon—and that, this being so, it is controlled by section 8321—1 and is entitled to priority only to the extent to which the proceeds are actually used as provided in section 8321—1.

No definition, other than above quoted, is given in the mechanic's lien law of a construction mortgage. The Johns mortgage is an ordinary mortgage such as is used in Ohio to secure money loaned. It is true, of course, that it was the mutual expectation of Johns and Williams that the latter would construct a building on the mortgaged premises, and that this money would be used for that purpose; but there is no covenant in the mortgage, or any agreement between the

parties, that the money should be paid out in any specific way, or for any specific purpose. It is not, in my opinion, a mortgage such as is described in section 8321—1.

This section requires a mortgage to contain the correct name and address of the mortgagee, and the mortgage in question gives no address for the mortgagee. It must also contain a covenant between the mortgagor and mortgagee, authorizing and empowering the mortgagee to do all things in this act provided by said mortgagee to be done. This mortgage contains no such covenant. It is vital, in order to bring a mortgage within the purview of section 8321—1, that this covenant should be contained therein. This, it seems to me, is the final test.

The things which the mortgagee must be authorized and empowered to do are provided in section 8321—1. Among them the following may be noted: The mortgagee shall not be required to pay out any money on the mortgage until 15 days after it is filed for record, at the end of which time he may, at his option, refuse to go forward with the loan or to pay out the fund, and, if no money has been advanced, he may cancel and release the mortgage. This option is given the mortgagee for some purpose, evidently, it seems to me, in order that he may inform himself of the amount of the prior liens, the probable cost of the improvement, and the feasibility of completing the improvement under the terms and conditions imposed by section 8321—1.

The mortgagee, if, after such investigation, he elects to complete the loan, shall, in order to obtain priority, distribute the mortgage fund in certain order: (1) Pay prior incumbrances or withhold for that purpose the amount thereof. (2) Retain sufficient funds to complete the improvement according to the original plans, specifications, and contracts, and within the original contract price. (3) He shall pay on the owner's order, directly to the contractors or subcontractors, such sums as the owner may certify to be necessary to meet labor pay rolls for said improvement. (4) He shall pay on the order of the owner accounts of materialmen and laborers who shall have given the mortgagee written notice of the amounts then due for material then furnished and labor then performed, and shall retain the same out of said mortgage fund. Certain other provisions are made as to the order in which the mortgage fund shall be distributed, and for the distribution thereof, which need not be stated at length. The mortgagee's obligation to comply with the fourth order above noted is subordinate to the obligation to retain sufficient money to complete the building according to the original plans and specifications. If the funds are insufficient, he shall in any event retain enough to complete the building, and, if there is a surplus, distribute the same pro rata among materialmen and laborers who have filed notices; otherwise, they get nothing. It might be interesting to speculate as to how the mortgagee could perform these requirements if the mortgage fund were not sufficient to pay for completing the building and laborers were unwilling to work and materialmen were unwilling to sell on credit.

Manifestly this mortgage is not within the class described in this

252 F.—59

section, nor controlled by it. It does not give the address of the mortgagee, and it does not contain covenants between the mortgagor and mortgagee, authorizing and empowering the mortgagee to do all things therein provided. The mortgagee may well hesitate, even after 15 days' investigation, to assume the burdens and obligations thereby imposed. Obviously this section was enacted to meet a special situation or provision. It contemplates liens prior to the mortgage, and a construction contract for the entire building, entered into prior to the giving of the mortgage or before the expiration of the 15-day period. It gives the mortgagee authority to pay all such prior liens, including mechanics' liens, as have already attached. It next requires the mortgagee to set aside a sufficient sum to complete the improvement according to the original plans, specifications, and contract; and within the original contract price. It subordinates the rights of materialmen ,and laborers who have or may give written notice to the obligation of the mortgagee to see that the improvement is completed. It does not, in any event, require the mortgagee to pay out more money than the amount of the mortgage; but it does deprive his mortgage of priority over mechanics' liens to the extent that he has disregarded the order of priority provided in this section in making payments. This section cannot be regarded as repealing or modifying the order of priority provided by sections 8310 and 8321. A mortgagor and mortgagee may execute, if they wish, a mortgage containing the covenants required by section 8321—1, and bring themselves within its provisions. They are not, however, required so to do, and until they voluntarily create this situation the provisions of section 8321—1 are not applicable, but those of sections 8310 and 8321 are. The mortgagee, except as modified in section 8321—1, has priority, provided only his mortgage was recorded before the beginning of the construction work; but, if a single item of labor or materials had been furnished before the date of recording the mortgage, then all of the work and labor furnished on that building, no matter at what date, become prior to the mortgage. This is the law which governs the present mortgage and the mechanics' liens asserted by the petitioners.

The petitioners do not urge in their brief or in argument here that the advances made by Johns after July 1st, the date when the construction work began, should be subordinated to the mechanics' liens because of the rule which subordinates future advances to attaching liens under some conditions. The referee has held that they are not subordinate, and I approve his conclusion. I do not, however, wish to be understood as holding that the mortgage in question is one to secure future advances, or is in any event within the rules relating to future advances, made after liens of others have attached to the mortgaged premises.

[6] 4. The referee held that Mrs. A. B. Tindall, having furnished labor and materials under a contract with the owner, is not entitled to a mechanic's lien, notwithstanding she complied with the requirements of section 8314, because she did not file the statement required of contractors by section 8312. On this hearing it was stated by her counsel, and acquiesced in by counsel for other lienors, that the state-

ment required by section 8312 had in fact been filed by her, and the record of the proceedings before the referee was by consent amended so as to show this fact. I find such a statement attached to and made a part of the referee's record. Inasmuch as other mechanic lien holders are the only persons interested adversely to Mrs. Tindall, and they are not objecting, I shall allow her lien in the amount claimed as a valid mechanic's lien in the same class with the liens of Thomas B. Jamison and others. The amount due her I find to be $73.34, with interest thereon from November 4, 1916.

The referee's order, marshaling liens and determining priorities as to the proceeds of sublot No. 11, entered March 18, 1918, will be corrected, so as to include Mrs. A. B. Tindall's lien as above noted, and, as thus modified, it is approved and confirmed.

An exception may be noted on behalf of the petitioners.

⟪⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes