## PRIORITY AS BETWEEN MORTGAGE AND MECHANICS LIENS.

Common Pleas Court of Cuyahoga County.

THE HARRIMAN NATIONAL BANK OF THE CITY OF NEW YORK, TRUSTEE, *v.* THE NORTH SHAKER BOULEVARD COMPANY ET AL.*

### Decided April 19, 1924.

*Mechanics Liens—Do not Attach until Work of Construction has Become Visible and Obvious—Claim of a Lien and also of Possessory Title Inconsistent—Nature of an Architect's Lien for Preliminary Sketches and Plans—Work Performed before Title Passed to Mortgagor or Award of Contract had been Confirmed—Failure of Proof as to Last Delivery of Material—No Affidavit Filed by Subcontractor—Security of Titles—Waiver of Common Law Lien—Validity of Mortgage Executed by a Foreign Trust Company not Authorized to do business in this State.*

1. A national bank, in the performance of acts relating to a trust, is not restricted by federal law to operations within the state of its incorporation, and the validity of a mortgage, covering property in Ohio and executed by such a bank as trustee, is not affected by the fact that, upon default on the part of the mortgagor, the trustee bank instituted proceedings in foreclosure, without having first complied with all the laws of the state applying to foreign corporations doing business within the state.

2. A mortgage on real estate takes precedence over mechanics liens based on a building located on the same premises, the construction of which had not proceeded at the time of the filing of the mortgage to such an extent as to be obvious and reasonably apparent to one making an inspection of the premises.

For Plaintiff:

*Ulmer & Berne; D. B. Gordin; Thompson, Hine & Flory; Tolles, Hogsett, Ginn & Morley; Henry S. Marting* of Cleveland. and *Bertram L. Kraus,* New York.

For Defendants:

The North Shaker Boulevard Company—*John N. Stockwell,* Receiver.

The Hunting Construction Company—*F. X. Cull* and *W. R. Daley* of *Bulkley, Hauxhurst, Jamison & Sharp.*

* Affirmed by the Court of Appeals, 22 O. L. R., 648,

Alfred W. Harris—*Gott & Bloomfield.*

The United Erecting Company—*O. P. Lambert.*

The Truscon Steel Company—*O. P. Lambert.*

The Cleveland Builders' Supply & Brick Company—*David Green, of Griswold, Green, Palmer & Hadden.*

G. A. Prescott, C. H. Prescott, W. H. Prescott, O. W. Prescott, Partners, doing business as Saginaw Bay Company—*David Green, of Griswold, Green, Palmer & Hadden.*

The Briar Hill Stone Company—*William A. Miller.*

The David Lupton Sons' Company—*Carr, Hagenbaugh & Bailey.*

The Clark Asbestos Company—Default; no answer filed.

The Anderson Manufacturing Company—*Turney & Sipe.*

Benjamin Berman—*Smith, Olds & Smith.*

The W. S. Tyler Company—*Robert M. Boyd.*

The Northern Ohio Lumber & Timber Company—*Ralph R. Snow.*

The Hugh Huntington & Son Company—*Maurer, Bolton & Griffin.*

The Harvard Lumber Company—*White, Brewer & Curtis.*

The Barrett Machine Company—*Moses Benjamin.*

The Cleveland Metal Roofing & Ceiling Company—*Edward J. Hobday.*

The American Gypsum Company—*David, Young & Vrooman.*

The Martien Electric Company—*Turney & Sipe.*

The Barger Steel Metal Company—*Wilbur B. Lutton.*

The Toledo Plate and Window Glass Company—*T. T. Fuerst.*

The Mechanically Applied Products Company—*Niman, Grossman, Buss & Holliday.*

John N. Wood—*W. J. Hamilton.*

The Dayton Lumber and Manufacturing Company—*Snider, Henry, Thomsen, Ford & Seagrave.*

The Otis Elevator Company—*Robert M. Boyd.*

The Maurer Brothers Company—*Smith, Olds & Smith.*

The Reister & Thesmacher Company—*Smith, Olds & Smith*

The Cleveland Plastering Company—*Albert L. Talcott.*

The Roddis Lumber and Veneer Company—*Turney & Sipe.*

The Colby Merrill Company—*Smith, Olds & Smith.*

The Donnelly Manufacturing Company—*F. X. Cull* and *W. R. Daley,* of *Bulkley, Hauxhurst, Jamison & Sharp.*

William A. Pope—*Stearns, Chamberlain & Royon.*

John N. Stockwell, Receiver—*Herrick, Hopkins, Stockwell & Benesch.*

HORNBECK, J.

On the 24th of April, 1922, the David Holding Company, a corporation of Cleveland, through its proper officers, signed and acknowledged deeds to the defendant, the North Shaker Boulevard Company, a corporation of Cleveland, conveying the land described in the petition. An attorney of the David Holding Company took possession of the deeds and held them until they were filed for record on the 26th day of May, 1922, at 3:05 and 3:06 p. m., respectively. The land conveyed to the defendant, the North Shaker Boulevard Company, was secured for the purpose of erecting thereon a structure comprising eight units to be known as the Moreland Courts. In the construction of these apartments it was proposed to trace chronologically, beginning at unit No. 1 and ending with unit No. 8, the history of English architecture.

To provide a part of the necessary funds with which to carry on the building operations a trust deed and first mortgage to secure a bond issue of $3,000,000 was executed by the defendant, the North Shaker Boulevard Company, to the plaintiff, the Harriman National Bank of New York, trustee. This instrument was dated for convenience May 20, 1922, was executed on the 24th of May, 1922, and filed for record with the recorder of Cuyahoga county at 3:07 p. m. on the 26th of May, 1922.

On the 20th or 27th of May, 1922 (the exact date is in dispute), a contract for the erection of the Moreland Courts was let by the defendant, the North Shaker Boulevard Company, to the Hunting Construction Company, J. L. Hunting,

president. Thereafter numerous agreements in writing were made by the Hunting Construction Company with parties defendants as sub-contractors and materialmen covering all phases of the erection of the Moreland Courts.

Prior to the filing of the trust deed and mortgage to the plaintiff, under the instruction of the Hunting Construction Company, the principal contractor, certain work was done and materials placed on the site of the Moreland Courts. Excavation for the foundation and basement of the building proper was begun on the 27th of May, 1922.

The Hariman National Bank had, prior to May 24, 1922, been issued certificates from the Federal Reserve Board and from the Department of Banks and Banking of Ohio authorizing it to transact a trust business.

Under a purchase agreement between the defendant, the North Shaker Boulevard Company, and the Cleveland Discount Company, the Discount Company advanced money to carry on the building project, taking bonds in return from the plaintiff on the basis of $1,000 worth of bonds for $800 advanced, and placed the bonds in the hands of purchasers. By this agreement $1,309,500 worth of bonds were issued by the plaintiff.

The defendant, the North Shaker Boulevard Company, is in default for performance of several of the conditions of the mortgage and trust deed. This action is brought by the plaintiff to foreclose the mortgage.

Defendants, John N. Wood and the Martien Electric Company, claim to have a possessory or common law lien on certain personal property which was to have been furnished by them under contract and to have been incorporated in the Moreland Courts building.

The other defendants, except the North Shaker Boulevard Company, assert that they are entitled to mechanics' liens on the premises prior to the lien of the mortgage and trust deed of the plaintiff.

Some of the answers of the defendants attack the validity of the trust deed—the authority of the plaintiff bank to act

as trustee under the instrument. Other questions are raised which, because of the determination of the main issue, viz., the priority between the mortgage and the mechanics' liens, do not require adjudication.

Because of the specific findings heretofore made in this case, the court will not again consider the amount of any claim, unless required to do so when discussing the question of law raised.

The court acknowledges the unusual diligence and helpfulness of counsel during the hearing of this case, and since its completion, in assisting in the proper determination of the many legal propositions advanced. The briefs on file are most comprehensive, and every issue raised by the pleadings has been anticipated and carefully and ably presented.

### STATUS OF THE TRUST UNDER FEDERAL AND STATE LAWS.

It is urged that the plaintiff has not the capacity to accept the trust created by the trust deed and mortgage from the North Shaker Boulevard Company.

*First: Under Its Federal License.* The plaintiff is a national bank organized under the laws of the United States with its place of business at 527 Fifth Avenue, New York City.

On the 14th of March, 1919, the Federal Reserve Board granted to the plaintiff, "the right to act, when not in contravention of state or local law, *as trustee,* or in any other fiduciary capacity in which state banks, trust companies or other corporations which come into competition with national banks, are permitted to act under the laws of the state of New York." The right of the Federal Reserve Board to issue this certificate of authority is not and could not be questioned. *First National Bank of Bay City* v. *Grant Fellows, Attorney General, ex rel. et al.,* 224 U. S., 416. By the terms of this instrument the plaintiff is granted such authority to act as trustee as might be delegated to state banks within the state of New York.

The general powers of state banks are set out in the extracts from Birdseye, Cumming & Gilbert's Consolidated Laws

of New York, Volume 1, second edition, Section 185, read into the record which, so far as are pertinent here, are found in Section 185, Subdivision 4 thereof, as follows:

"In addition to the powers conferred by the general and stock corporation laws, every trust company shall, subject to the restrictions and limitations contained in this article, have the following powers: *To act as trustee under any mortgage or bonds issued by any municipality,* body politic or *corporation, foreign* or domestic, and accept and execute any other municipal or corporate trust not prohibited by the laws of this state."

The limitations on New York corporations other than trust companies, Section 223 Birdseye, Cumming & Gilbert's Consolidated Laws of New York, Volume 1, second edition, page 650, offered by counsel for the Hunting Construction Company do not apply to a national bank acting under authority from the Federal Reserve Board. Section 185, *supra,* vests the plaintiff with authority to accept a foreign trust.

It is urged, however, that the plaintiff should be restricted in its acts, incidental to the trust, to its place of business. Such a limitation does not appear in any of the laws under which the plaintiff bank receives its authorization to conduct a trust business, and would seem to be in conflict with the power granted under Section 185, *supra,* to act as trustee under mortgage of a foreign corporation.

There is ample authority to the effect that even though the plaintiff, *under its Federal grant,* did not have the authority to accept this trust, its right could not be questioned in this action, but must be attacked directly by the Federal Government. *Kerfoot* v. *Bank,* 218 U. S., 281; *Mapes* v. *Scott,* 94 Ill., 379; *Hennesey* v. *City of St. Paul (Minn.),* 55 N. W., 1123; *Wherry* v. *Hale,* 77 Mo., 20; *Camp* v. *Land (Colo.),* 54 Pac., 839; *Baker* v. *Scofield,* 221 Fed., 322; *DeWitt County National Bank* v. *Mickleberry (Ill.),* 91 N. E., 86; *First National Bank* v. *Messner (N. D.),* 141 N. W., 999; *Taylor* v. *Davidson (Tex.),* 120 S. W., 1018; *Oklahoma City National Bank* v. *Ezzard (Okla.),* 159 Pac., 267; *Merchants National*

*Bank of San Francisco* v. *Weston,* 168 Pac., 587; L. R. A., 1917-A, 740.

*Second: Under Its State License.*  It is claimed that the plaintiff had no authority by virtue of the trust deed and mortgage to act as trustee under the laws of Ohio.

The plaintiff was issued a certificate by the Superintendent of Banks of Ohio, under date May 20, 1922, to the effect that it had complied with the laws relating to foreign trust companies and was licensed to transact business within the state for a period of one year.  The recital of the certificate that plaintiff had complied with laws relating to foreign trust companies was not warranted.

The plaintiff did, however, comply fully with Section 710-150, G. C., and was thereby authorized to *accept* the trust.

Section 710-154, G. C., requires foreign trust corporations legally admitted to do business in Ohio to comply with Sections 710-150, 151, 152, G. C., and Section 710-151, G. C., requires a certificate of admission issued by the Secretary of State based upon observance of the provisions of Sections 178 to 188, G. C., inclusive, as may apply.

Section 178 is as follows:

"Before a foreign corporation for profit transacts business in this state, it shall procure from the Secretary of State a certificate that it has complied with the requirements of law to authorize it to do business in this state, and that the business of such corporation to be transacted in this state, is such as may be lawfully carried on by a corporation, organized under the laws of this state for such or similar business, or if more than one kind of business, by two or more corporations so incorporated for such kinds of business exclusively.  No such foreign corporation doing business in this state without such certificate shall maintain an action in this state upon a contract made by it in this state until it has procured such certificate.  This action shall not apply to *foreign banking,* insurance, building and loan, or bond investment corporations."

It will be noted that Section 178, G. C., excepts from its operation foreign banking corporations,

It is claimed that the Banking Act of April 4, 1919, 108 O. L., part 1, pages 80-130, inclusive, repealed the exception in Section 178, G. C. Like exception to the application of Sections 183-187, G. C., inclusive, is made in Section 188, G. C. If any part of Sections 178-188, G. C., inclusive, is repealed it is done by implication. Repeal by implication is not favored. *Railway Company* v. *Pace,* 68 O. S., 200; *State, ex rel.,* v. *Commissioners,* 20 O. S., 421.

Sections 178-181, G. C., inclusive, have been effective since 1893, 90 O. L., 261. Sections 183-191, inclusive, substantially as now found, have been effective since 1894, 91 O. L., 272. At all times they have carried the same exceptions. These statutes were of general application and must have been well known to legislators and codifiers. Section 5508, G. C., applying to all foreign corporations, etc., and declaring void certain contracts of such corporations as have not complied with Section 178, G. C., was enacted in June, 1911, almost eight years before the Banking Act, and in the light of the exceptions in Sections 178 to 188, G. C.

The exception in Section 178, G. C., however, is not broad enough in its terms to exempt the plaintiff from its provisions.

A national bank of a state other than that in which it is located is a *foreign corporation. Beckman* v. *Hague,* 60 N. Y. S., 767. The plaintiff is a foreign banking corporation; but it is more. *It is a foreign banking corporation with trust powers.* In matters relating to the exercise of trust powers, it must be considered a trust corporation. It was a *foreign trust corporation* under Sections 710-151, 152, 153 and 154, G. C., and was required to comply with Section 178, G. C., *provided it transacted any business in Ohio.*

The trust deed was executed by the plaintiff in New York. As before indicated, authority to *accept* the trust in Ohio real estate was granted by compliance with Section 710-150, G. C. The trust under certain contingencies required a *transacting of business* in Ohio. Article III, Sections 8 and 9, Article VII, Sections 3 and 4 and Article VIII—Trust Deed.

It was to the interest of both the North Shaker Boulevard

Company and the plaintiff to have the mortgage deed a first lien on the property described. But it was incumbent upon the mortgagor to record and file the mortgage. Article 10, Section 1-a, Trust Agreement. The only acts disclosed by the record, which if done by the plaintiff, may be said to be a *doing of business in Ohio* were the taking of the waivers from subcontractors and materialmen. Plaintiff's Exhibits 4a to 4z. It was the duty of the North Shaker Boulevard Company, by the terms of the trust agreement, to secure these waivers. Article III, Section 1, Trust Agreement:

"The company covenants  *   *   *  that this trust deed is and always will be a valid first lien upon the fee simple estate of the company in the premises and property described in the granting clause hereof  *   *   *  and that it will not create or suffer to be created any lien or charge having priority to or preference over the liens of this trust deed upon the trust estate, or any part thereof."

Article III, Section 15, Trust Deed:

"Whenever demanded by the trustee, the company will do, *execute, acknowledge and deliver,* or *cause to be done* all such further acts, deeds, transfers and assurances for the better assuring, conveying, confirming and pledging unto the trustee all and singular the premises and property hereby conveyed, assigned or mortgaged, or intended so to be, or which the company herein has covenanted and agreed hereafter to convey, assign or mortgage as the trustee shall reasonably require for better accomplishing the provisions and purposes of his trust deed and for securing of the payment of the principal and interest of the bonds intended to be secured."

Mr. Marting testifies that in matters incident to the trust deed, except opinion as to title and mortgage lien and opinion on the bond issue in which plaintiff and the Cleveland Discount Company were respectively interested, he was the attorney for the North Shaker Boulevard Company. (Record October 22, pp. 149, 150 and 160.) Mr. Kraus testifies that Marting was the attorney for the North Shaker Boulevard Company (Record October 22, page 11), and that he requested of Marting in that behalf the waivers in question (Record

October 22, pp. 73 and 74), and that Mr. Marting secured them on behalf of the North Shaker Boulevard Company (Record October 26, pages 76 and 77).

The filing of a suit, the application for the appointment of a receiver, and steps incident to the prosecution of an action have been held, almost without exception, not to be a doing of business within the meaning of acts similar to the one which is under consideration in this case. *Alpena Portland Cement Co.* v. *Jenkins & Reynolds Co.* (Ill.), 91 N. E., 480; *Buffalo Zinc & Copper Co.* v. *Crump et al.* (Ark.), 69 S. W., 572; *Chicago Title & Trust Co. et al.* v. *Bashford et al.* (Wis.), 97 N. W., 940.

The plaintiff transacted no business in Ohio under the trust deed, and for that reason was not required to comply with Section 178, G. C.

### Was Mortgage Deed a First Lien?

The trust deed and mortgage from the North Shaker Boulevard Company to the plaintiff was filed for record with the Recorder of Cuyahoga County, May 26, 1922, at 3:07 p. m. The deeds from the David Holding Company to the North Shaker Boulevard Company were filed for record immediately prior to the filing for record of the trust deed and mortgage.

A mortgage on real property filed for record under Section 8542, G. C., prior to work commenced on a building or other structure on that property, within contemplation of our mechanics' lien law, takes precedence over mechanics' liens.

The fourth proposition of the syllabus of the case of *Rider* v. *Crobaugh*, 100 O. S., 88, follows:

"If it is reasonably apparent to the mortgagee that the construction, excavation or improvement had not actually and obviously commenced when the mortgage was filed for record, then such mortgage would retain priority."

It is urged that no issue in the case required the foregoing pronouncement. Even so, it is a positive expression of opinion of the court of last resort carried into the syllabus, which

is salutary and helpful to a lower court having a like proposition under consideration. It is a practical answer to a nice question.

Mr. Hunting, president of the Hunting Construction Company, the principal contractor for the building to be erected on the property of the North Shaker Boulevard Company, caused a steam shovel, a wooden mat and certain planks to be used therewith to be placed on the premises on May 11, 1922. Prior to May 27, under Mr. Hunting's instructions, a certain test hole was dug, under like instructions stakes were driven on the premises to make the outline for building on Lot No. 100, and certain temporary staking was done by the architect prior to May 27. These operations and labor incident thereto comprised all the work done or material furnished on the premises prior to May 27, 1922. The steam shovel, most of the coal and the lumber were removed prior to May 27, by Mr. Hunting on orders from Mr. Peck or Mr. David.

Defendants mechanics' lien claimants assert that their liens attach under Section 8321, G. C., as against the mortgage of plaintiff as of the date the first labor was performed, or that machinery, materials or fuel, were begun to be furnished on the North Shaker Boulevard project by the contractor under the original contract. This is a broader interpretation of the second subdivision of Section 8321, G. C., than is warranted in the light of *Rider* v. *Crobaugh, supra.* Granted that the court in the employment of the language "commencement of construction" meant to include all labor, machinery, materials or fuel furnished prior to the beginning of actual construction, even then, evidence of the furnishing of such materials or labor must be *reasonably apparent* to the mortgagee when his mortgage is filed for record.

Giving to the expression "commencement of construction" the liberal interpretation suggested, the evidence is compelling to the effect that construction had not commenced, machinery, material or fuel had not been furnished, so that any of them was *reasonably apparent* to the plaintiff on the morning of May 27, 1922. It is certain that construction or excavation

had not actually or obviously commenced. Those conclusions are sustained by all of the photograprs offered by defendants and by the testimony of Marting, pages 96, 97, 103 and 144 of Record of October 22; LaBell, pages 168-169 of Record October 22; Remelin, pages 150-151, Record October 30; Peck, page 36, Record November 2, and by Mr. Hunting. And the record offers no contradiction.

Nor is there convincing testimony that the plaintiff had actual notice of the commencement of any work, the placing of any machinery or the furnishing of any fuel or material on the North Shaker Boulevard Company property prior to the filing of its mortgage and trust deed.

It is not probable that it was the purpose of those who framed the mechanics' lien law to require a mortgagee in good faith, after a time'y and reasonable inspection of the property on which he was to take a mortgage to determine if construction had commenced, to make further investigation at his own risk, to learn if there had not at a prior time been some material or fuel placed upon the premises by the contractor for a building to be erected on that property.

The inspection of the mortgaged premises in the instant case was timely. It followed in a very few hours after the filing of the deeds passing title to the mortgagor, the North Shaker Boulevard Company. Physical conditions were undoubtedly the same as they were at the time of the filing of the mortgage for record. The inspection was reasonable and thorough and unusual precautionary measures were taken to make it effective. (Testimony of Marting, pp. 96, 97, 104 and 144, Record October 22; Remelin, pp. 149, 150 and 151, Record October 30, and photos, Plaintiff's Exhibits 5a, 5b and 5c.

### WORK OF CONSTRUCTION.

The phrase "work of construction" will not sustain the broad interpretation claimed for it by counsel for mechanics' lien claimants.

Section 8310, G. C., is definitive of those who may assert a mechanic's lien, the conditions under which it may be obtained

and the extent to which it may attach.  The time when the lien attaches is fixed by Section 8321, G. C.—Between the owner and a mechanic's lien claimant only, under the first part of the section, it dates from the first labor performed or the first machinery, material or fuel furnished by the contractor under the original contract.  The first and second divisions fix priority among lien claimants.  The second paragraph of Section 8321, G. C., is an exception to the priority of mechanics' liens as against titles, liens or incumbrances given or recorded prior to the commencement of construction.  The section so far as it is pertinent here is as follows:

"The several liens herein provided for shall be liens from the date the first labor was performed, or the first machinery, material or fuel, was furnished by the contractor under the original contract.  * * *  If the action be brought to en-force such lien within that time, it shall continue in force until final adjudication thereof, and such liens shall take priority as follows:

"First  *  *  *

"Second.  They shall be preferred to all other titles, liens or incumbrances, which may attach to or upon such construction, excavation, machinery or improvement, or to or upon the land upon which they are situated, which shall either be given or recorded *subsequent to the commencement of said construction, excavation or improvement.*"

It is improbable that the language italicized was meant to be synonymous with "from the date the first labor was performed or the first machinery, materials or fuel was furnished by the contractor under the original contract," as used in the fist part of the section.  If synonymous, then there is little need for the second paragraph of Section 8321, G. C.

If intending to give mechanic's liens preference over titles, liens or incumbrances on the property, given or recorded, subsequent to the date "the first labor was performed, or the first machinery, material or fuel was furnished," etc., this specific language would in all probability have been used.  The form of expression would not have been changed, if a different meaning was not meant to be conveyed.

It has been said in the case of *Bloom* v. *Noggle*, 4 O. S., 45, that the object of Section 8542, G. C., requiring that mortgages shall be recorded in the office of the recorder of the county in which the mortgaged premises are situated and take effect from the time they are delivered to the recorder of the proper county for record, etc., is to avoid all questions of notice, actual or constructive, in determining the priorities of mortgage liens. It would be in accord with the principle enunciated in the foregoing decision, if the legislators in enacting paragraph second of Section 8321, G. C., meant to require some work of construction to be begun on the land on which the building was to be constructed by a mechanic's lien claimant which, upon observation, would amount to notice to one who was seeking to claim a lien on the property.

The presumption attends that when the phrase "subsequent to the commencement of said construction" was employed in the second paragraph of Section 8321, G. C., our legislators acted advisedly and with full knowledge of the weight of their words as determined judicially. 36 Cyc., 1155.

*In Re Sweet Laboratories Co.*, 261 Federal Reporter, 810, decided in May, 1919, Judge Sater at page 813 said:

"The present Ohio law was modeled largely after that of Michigan. * * * The last paragraph of Section 8321, Ohio G. C., is taken practically verbatim from Section 9 of the Michigan Act. * * * It is reasonable to suppose that the Ohio legislature, in adopting such provisions of the Michigan act, did so in view of the construction which had been put upon it, and with the intention that it should receive the same construction as has been given it by the Michigan courts."

In *Kay* v. *Townsley*, a Michigan case, 71 N. W., 490, the court at page 491, quoting from the Michigan statute, which is substantially the same as the second paragraph of Ohio G. C., Sec. 8321, say:

"This provision has been frequently passed on by our courts, and it has been uniformly held that the lien had priority over the mortgage executed upon the lands or premises after the *actual commencement* of the building," etc.

"Commencement of construction" has been frequently defined by the courts.

In the case of *J. Thomas & Co.* v. *Jerome Mowers*, 27 Kan., the court at page 267 cites with approval the following authorities:

"The commencement of a building  *  *  *  . is the first labor done on the ground which is made the foundation of . the building, and to form part of the work suitable and necessary for its construction." *Pennock* v. *Hoover*, 5 Rawle, 291, 308.

"The commencement of a building in law takes place with the digging and walling of the cellar." *Id.*

"It ' is some work or labor done on the ground  *  *  * such as beginning to dig the foundation  *  *  *  which any one can readily see and recognize as the commencement of a building.' " *Brooks* v. *Lester*, 36 Md., 65, 70.

The lien statute under consideration in that case read as follows:

"Such liens shall be preferred to all other liens and incumbrances which may attach to or upon such lands, buildings or improvements, or either of them, subsequent to the commencement of such building," etc.

"The commencement of a building is the doing of some act upon the ground upon which the building is to be erected, and in pursuance of a design to erect, the result of which act should make known to a person viewing the premises, from observation alone, that the erection of a building upon the lot or tract of land had been commenced." *James* v. *VanHorn*, 39 N. J. Law (10 Vroom), 353-356.

To like effect, *Mutual Life Insurance Co.* v. *Rowand*, 26 N. J. Eq., 389-392; *Jacobus* v. *Mutual Benefit Life Insurance Co.*, 27 N. J. Eq., 604-606; *Geer & Osborne* v. *Tuggle et al.*, 22 N. P. (N. S.), 129-136; *Pusey & Jones* v. *Pennsylvania Paper Mills*, 173 Fed., 647.

In the case of the *Kansas Mortgage Company* v. *Weyerhauser et al.* (Kan.), 29 Pac., 153, it is said:

"The act of furnishing or placing on the ground some material that is afterward used in the construction of the building is not the 'commencement of the building.' "

At page 156 the court say:

"We venture to say that, as the avowed object and main purpose (in the use of the language 'commencement of building') is to create an impression on the mind of any person who seeks to purchase or acquire an interest or lien in the land, the acts indicating that a building thereon is being commenced ought to consist of work of such a character that a person of ordinary observation could determine that a building was in process of construction. Does the deposit of some material on a vacant lot create such an impression as amounts to notice? While it might, how much stronger does the excavation for the foundation walls or for the cellar convey the necessary notice. The material may turn out to be a temporary deposit, but the excavation is an unmistakable index to the intention of the owner to build." * * *

"We think it better for all concerned that we adhere to the beaten path followed by other courts, and hold that the mere placing of some material on lots is not the commencement of the building as intended by the legislature. It is not certain, definite or fixed. Questions may arise as to the amount, character or nature of the material, and, after all, the material may not be used, or, if used, only after a long time."

In the case of *Newhall Engineering Company* v. *Egolf*, 185 Federal Reporter, 481, the court had under consideration a Pennsylvania statute, which provided that a mechanic's lien, in case of an original construction, shall take effect "as of the date of the visible commencement on the ground of the work of building the structure or other improvement." The court cites the case of *Pennock* v. *Hoover, supra,* and its definition of the commencement of a building, and says, in substance, that the legislature in passing the statute quoted, was reading into it the judicial definition of commencement of construction.

There is one case which, because of the eminence of the judge who rendered the opinion, arrests attention, *In re Williams,* 252 Fed., 924, in which Judge Westenhaver at page 930, said:

"The mortgage, except as modified in Section 8321-1, has priority, provided only his mortgage was recorded before the

beginning of the construction work; but, if a single item of labor or materials had been furnished before the date of the recording of the mortgage, then all of the work and labor furnished on the building, no matter what date, become prior to the mortgage.''

It should be noted, however, in the foregoing case it was conceded that the mortgage which was declared to have priority was filed on April 20, 1916, and that building operations began July 1, 1916.

So far as the record discloses there was no attempt to fix the mechanics' liens as prior to the mortgage because of labor or material furnished before its filing. The court is satisfied that this decision is counter to the great weight of authority and is in conflict, in part at least, with *Rider* v. *Crobaugh, supra.*

The stability of titles, safety of mortgage loans, *bona fide* business relations between owners of real estate and those who extend them credit, will be encouraged and no contractor, material man nor laborer need lose by the determination that a mechanic's lien shall not take priority over a *bona fide* mortgage filed prior to actual work of construction.

If the date the first labor is performed, the first machinery, materials or fuel is furnished, is to fix the time when the lien shall attach on real estate as against a *bona fide* mortgage taken prior to actual construction commenced, such uncertainty of title will result that no purchase nor loan can safely be made as against the possibility that the owner may have contracted for the erection of a building thereon and some labor have been performed, or material furnished, even though not visible to the purchaser or mortgagee.

Such construction would be far more inimical generally to the financial interests of those for whose benefit the mechanics' lien act was enacted than the construction which the court adopts in this case.

OTHER CONTROVERTED PROPOSITIONS.

It is held in the case of *John F. Fisher* v. *John Jacobs et al.*, 24 N. P. (N.S.), 505, that "a copy of a mechanic's lien under Section 8315, G. C., must be served upon the person owning the property at the time the first material was furnished or labor performed under the original contract for construction. Mechanics' lien claimants in the instant case could not have complied with Section 8315, G. C., in the light of the foregoing case, for the reason that when the first labor was performed and material furnished by the original contractor, the David Holding Company, and not the defendant, the North Shaker Boulevard Company, was the *owner* of the land described in the petition.

Mr. Marting had charge, in the main, of the necessary legal procedure incident to the preparation of proper written instuments connected with the bond issue prior to the beginning of actual building operations on the North Shaker Boulevard Company site. Mr. David and Mr. Peck assisted. No doubt it was hoped that work could begin sooner than it was actually begun. Mr. Hunting was in the closest touch with all of these men, and likewise with Mr. Kirby.

Independent of the written contract, whether executed May 20 or May 27, 1922, Mr. Hunting knew that the whole building program was to be financed from the proceeds of the mortgage and trust deed to the plaintiff; that all building operations were to be held in abeyance pending the consummation of that arrangement, viz., *the recording of the mortgage.* (Cross examination Hunting, pp. 128-129, Record October 31; testimony of Carmichael and Davis, Superintendents for the Hunting Construction Company, page 57 of the Record November 1, a. m., and pp. 13-14, November 1, p. m. No purpose is disclosed to begin building operations until the filing for record of the mortgage.

Mr. Hunting was definitely apprised prior to May 27, 1922, of the necessity of withholding any work under the contract until the filing of the mortgage by representatives of the North Shaker Boulevard Company, the Cleveland Discount

Company and the David Holding Company: Marting, North Shaker Boulevard Company, page 120, Record October 22; Remelin, North Shaker Boulevard Company, page 152, Record April 30; Peck, Cleveland Discount Company, pages 36, 39 and 53, Record November 2, p. m.; cross examination Hunting, page 149, Record October 31; David Holding Company, cross examination Mr. Hunting, page 150, Record, October 31.

Mr. Peck testifies that he instructed Mr. Hunting not to take the steam shovel onto the premises, page 37, Record November 2, and Mr. Hunting tacitly admits that he was so instructed, page 150, Record October 31.

Mr. Hunting had no contract while the steam shovel and all materials used with it were first on the North Shaker Boulevard Company's property, nor when the test hole was dug thereon, and under the most favorable viewpoint for the mechanics' lien holders, this steam shovel and material were on the site awaiting word from the owner that the condition on which he could proceed under the contract had been met, *i. e., that the mortgage had been filed for record.*

There is no proof tending to show that Mr. Hunting went onto the premises with the steam shovel on May 11 under authority of any one, except his statement, that Mr. Kirby so instructed him long prior to the written contract between the Hunting Construction Company and the North Shaker Boulevard Company. A fair interpretation of what Mr. Hunting says that Mr. Kirby said to him, in the light of what is disclosed by the record that Mr. Hunting knew about the mortgage arrangement, does not warrant a conclusion that he was directed to take the steam shovel onto the premises even by Mr. Kirby.

The testimony adduced compels the conclusion:

First: That Mr. Hunting had no authorization from any officer or director of the Cleveland Discount Company, the North Shaker Boulevard Company nor the David Holding Company to place the steam shovel nor anything incident to its operation, nor to dig a test hole on the premises described in the petition, prior to May 27, 1922.

Second: That he at all times understood that his right to commence work or to furnish material *under the contract* began subsequent to *the filing of the mortgage and trust deed* for record.

Third: That in placing the steam shovel, coal and lumber on the premises, he did so only as preliminary preparation to work of construction when authorized to proceed under the contract of his company.

Fourth: That he commenced no work and furnished no material *under the contract* until after the recording of the mortgage and trust deed.

Because of the foregoing conclusions of fact and construction of the mechanics' lien law, the court is of the opinion that the mortgage and trust deed of the plaintiff is a valid and subsisting lien on the premises described in the petition prior to the valid mechanics' liens of certain defendants against the property.

The purported liens of the following defendants are found to be void or not available to them:

The Roddis Lumber & Veneer Company; the Midwest Hardware Company. These defendant companies retained possession of the property which represents the amount of their claims, having elected to retain their property they waived their mechanics' liens.

The Northern Ohio Lumber & Timber Company. This claim is void. The defendant company failed to serve a copy of affidavit for mechanic's lien with the owner of the property on which the building was erected.

The Reaugh Construction Company. This claim fails because there is no proof of the last delivery of material within sixty days prior to the filing of its lien. The amount claimed by this defendant company was $3,190.99, the amount established by the testimony was $1,140.94.

The Tyler Company. This defendant was a subcontractor and filed no affidavit as required by Section 8312, G. C. *Minnie E. Shaner et al.* v. *Brooklyn Lumber Company,* No. 4197, Court of Appeals, Cuyahoga Co.

The Donnelly Manufacturing Company. This claim was not urged.

The King Bridge Company. The amount of the claim asserted by this defendant company was $20,115.42; the testimony discloses that it should be reduced to the sum of $6,519.87.

The following defendants have maintained their claims by sufficient proof in the amounts heretofore set out in the findings of the court, made under date of December 20, 1923:

The American Gypsum Company.

The Cleveland Builders' Supply & Brick Company.

Benjamin Berman.

Saginaw Bay Company.

The Hugh Huntington & Son Company.

The Harvard Lumber Company.

The Barrett Machine Company.

The Toledo Plate & Window Glass Company.

The Mechanically Applied Products Company.

The Truscon Steel Company, on its general lien, which includes the lien of

The United Erecting Company.

The Colby Merrill Company.

The Cleveland Metal Roof & Ceiling Company.

The Maurer Brothers Company.

The. Cleveland Plastering Company.

The Reister & Thesmacher Company.

The Barger Sheet Metal Company.

David Lupton's Sons Company.

John M. Wood, which includes the lien of

The Briar Hill Stone Company.

Martien Electric Company.

The Anderson Manufacturing Company.

Otis Elevator Company.

Alfred W. Harris, Architect, for so much of his claim as represents work done or services performed with relation to the construction on the premises described in the petition.

The Huntington Construction Company, the amount of

claims which it has proven under its general lien in accordance with the finding of the court of the proper amount due the respective lien claimants.

William A. Pope.

The claim of Alfred W. Harris, Architect: The proof shows that defendant Harris was the supervising architect on the Moreland Courts project. Much of his claim is represented by preliminary sketches, drawings and specifications. This type of work is not such as would enable the claimant to establish a lien prior to a mortgage taken in good faith before actual work of construction begun, but it is sufficient to support a mechanic's lien as against the owner of the project. *In re Kinnane Company*, 14 O. L. R., 531; *Phoenix Furniture Co.* v. *Put-In-Bay Hotel Company*, 66 Fed., 683.

The Martien Electric Company: This defendant asserted and made proof of its claim for mechanic's lien, which claim has been allowed. It also sought to urge a possessory lien, contending that the title to the electrical fixtures which, under its contract, it was to provide for the Moreland Courts had not passed to the purchaser. Independent of the inconsistent position of this defendant in attempting to assert a mechanic's lien and also to claim a possessory lien, the testimony does not support in any degree whatever that it retained possession of the property in question.

John M. Woods: This defendant had several contracts with the general contractor, the Hunting Construction Company, to provide stone for the units of the Moreland Courts building. The stone which was to be used in the building was shipped to this defendant from the Briar Hill Stone Company in the rough and under his contract he was to cut and prepare it for the building. The work incident to the cutting of the stone was done in a temporary shed built by this defendant in a yard leased to defendant by the Hunting Construction Company a short distance from the building site.

At the time the work was discontinued on the building project, Mr. Wood had in the yards about 13,000 cubic feet of stone, 2,635 cubic feet 7 inches of which was uncut and the

remainder cut ready to go into the building. The value of the stone is estimated at $67,500. Mr. Wood had received the total amount due under his contract for all the stone delivered and placed in the building and a credit of $50,000 on the stone remaining in the yards. Mr. Wood perfected his claim for mechanic's lien and asserted it in this action; he also claims a common law lien on the stone remaining in the yards on the theory that the title to this stone has never passed from him; that to the extent of the balance due, he has a lien thereon. The conduct of Mr. Wood indicates that even if he had a right to assert a common law lien he has waived it.

The theory of the Mechanic' Lien Law is that those who do labor and furnish *material going into* the erection of a building, thereby enhance the value of the land on which it is erected, and are entitled to a lien on the completed structure. (Rockel Mechanic's Liens, 51.) Under strict interpretation, if the material was not used in the building there would be no added value to the land.

This rule, of course, is relaxed if the material was furnished to go into the building, but was prevented by some act of the owner. It is apparent that a mechanic's lien rests solely on the proposition of ownership and the right of possession having passed from lien claimant to the owner. To claim a mechanic's lien and a possessory lien, or common law lien, are fundamentally contradictory.

After the appointment of a receiver for the North Shaker Boulevard Company, Mr. Berne, attorney for the receiver, and Mr. Hefferman visited the yards of defendant Wood, and upon this occasion Mr. Wood pointed out and identified the stone cut and uncut, which he designated, in substance, as belonging to the North Shaker Boulevard Company. Negotiations were entered into by which Mr. Wood would buy from the receiver the uncut stone in his yards, and in pursuance of this agreement, Mr. Wood made up a list of the uncut stone and mailed it to the receiver. The purchase was not completed because Mr. Wood insisted that the price of the stone be credited on his account under his contract, and the receiver

insisted on cash. There was a proposal by Mr. Berne to enclose all of the stone which had been pointed out by Mr. Wood as belonging to the North Shaker Boulevard Company, to which arrangement no objection was made. Mr. Wood was left in possession of the yards as a matter of accommodation to him, and to enable him to do work on stone to be used in other jobs. His whole course of conduct is inconsistent with his claim that he meant to maintain a common law lien on the stone in his yards.

There will, of course, be no trouble in identifying the cut stone; the uncut stone is in slabs, all of which, under the testimony, is alike; and the amount of uncut stone is testified to in the record. There can be no doubt that under the mortgage and trust deed the plaintiff had a mortgage on the stone in controversy in the Wood claim, and as between the plaintiff and the North Shaker Boulevard Company there can be no question as to the validity of this mortgage. It was not recorded, and probably could not be asserted as against any one who had no notice of it, but as between the defendant Wood and the defendant, the North Shaker Boulevard Company, ownership of this stone is in the North Shaker Boulevard Company.

The most difficulty arises in this claim as to the right of the defendant Wood to a mechanic's lien. The court, however, resolved all doubts in his favor and made a finding in his behalf on his claim.

Because of the view taken by the court of the priority of the mortgage of the plaintiff over the mechanics' liens, it will not be necessary to consider the questions of waivers, the failure of the plaintiff to comply with Section 8312, G. C., nor to determine whether or not the mortgage was a construction mortgage within the contemplation of Section 8321-1, G. C.

During the progress of the trial testimony was offered and accepted subject to its competency. In all instances the record may show that the court holds this testimony to be competent and admits it.